UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | CRIMINAL NO. 3:17-343 |
| ROBERTO TORNER | : | (JUDGE MANNION) |
| Defendant/Petitioner | : | |

## MEMORANDUM

Defendant Roberto Torner filed a motion to vacate his conviction and sentence pursuant to 28 U.S.C. §2255. (Docs. 354, 355). The government opposes the motion. (Doc. 371). Since it plainly appears from the motion and record of prior proceedings that Torner is not entitled to relief, the court will **DENY** the motion without a hearing.

I. BACKGROUND

In June 2015, the Luzerne County Drug Task Force commenced an investigation into Roberto Torner after receiving information about his heroin trafficking and firearms activity from a confidential informant. Investigators subsequently used the C.I. to conduct a controlled purchase of approximately five grams of heroin from Torner, his girlfriend Liza Robles, and his associate David Alzugaray-Lugones. The controlled buy and conversations leading up to the event were captured in a series of recorded

phone calls and body camera videos obtained by the C.I. (Doc. 306 ¶¶ 16–19).

Beginning in August 2016, the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) commenced an investigation into Torner, Robles, and Alzugaray-Lugones involving suspected arson, insurance fraud, and firearms offenses. On August 28, 2017, after obtaining information about Robles's historical firearms purchases and activities, and after interviewing witnesses who reported recent instances of Torner possessing firearms, the ATF executed search warrants at Torner's properties. During the execution of those warrants, the ATF recovered multiple firearms and ammunition. The ATF also recovered videos from the surveillance cameras placed around the exterior of the residence. A review of the videos identified an incident on August 23, 2017, where Torner drew a handgun and pointed it at Alzugara-Lugones and subsequently handed the firearm to Robles. (Doc. 306 ¶¶ 21–32).

The ATF interviewed additional witnesses, who relayed accounts of Torner possessing firearms. One of those witnesses provided law enforcement with a surreptitious recording previously made of Torner, during which he described his drug trafficking and firearms activities. That recording was not made at the direction of law enforcement. (Doc. 306 ¶¶ 33, 35, 37).

Torner was granted pretrial release after being charged in a criminal complaint and subsequent indictment. Thereafter, the ATF obtained information from witnesses that Torner possessed C-4 explosives while on pretrial release. Torner also sent a text message to an ATF agent that corroborated those witnesses' accounts. On January 5, 2018, law enforcement officials executed a search warrant at one of Torner's properties, where they recovered approximately 1.5 pounds of stolen U.S. military C-4 plastic explosives. (Doc. 306 ¶¶ 34, 36, 38–39).

Torner proceeded to trial on a superseding indictment filed January 20, 2018, charging him with a conspiracy to distribute and possess with intent to distribute heroin, in violation of 21 U.S.C. §846; the distribution of heroin, in violation of 21 U.S.C. §841(a)(1); a conspiracy to possess firearms by a convicted felon, in violation of 18 U.S.C. §371; the possession of firearms by a convicted felon, in violation of 18 U.S.C. §922(g)(1); the possession of stolen explosives while on pretrial release, in violation of 18 U.S.C. §§842(h) and 3147(1); and the possession of explosives by a convicted felon while on pretrial release, in violation of 18 U.S.C. §§842(i) and 3147(1). (Doc. 61). The parties then engaged in extensive pretrial litigation.

On October 31, 2018, following a 12-day trial, Torner and his codefendants were convicted of all counts in the superseding indictment.

(Doc. 229). Torner was sentenced on February 12, 2020, to 270 months of imprisonment, five years of supervised release, and a $20,000 fine. (Doc. 314).

Torner challenged his conviction and sentence on direct appeal, targeting the court's rulings on his suppression motions, its evidentiary rulings at trial, and its sentencing determination that he had a prior conviction for a crime of violence. The Third Circuit Court of Appeals affirmed Torner's conviction and sentence. *See United States v. Robles*, 855 F. App'x 804 (3d Cir. 2021). Torner's subsequent petition to the Supreme Court for a writ of certiorari was denied on October 4, 2021.

Through trial, sentencing, direct appeal, and in his petition for writ of certiorari, Torner was represented by counsel Gino Bartolai, Esq. Torner now alleges that counsel provided ineffective assistance at trial for failing to seek suppression of recordings, for his strategic decisions during trial, and for discussing a juror's dismissal without Torner present.

## II.   LEGAL STANDARD

When a district court imposes a sentence on a defendant who believes "that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by

law, or is otherwise subject to collateral attack, [the defendant] may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. §2255(a); *see United States v. Eakman*, 378 F.3d 294, 297–98 (3d Cir. 2004). "Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States Attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." §2255(b).

"Section 2255 does not afford a remedy for all errors that may have been made at trial or during sentencing"; rather, §2255 "is implicated only when the alleged error raises 'a fundamental defect which inherently results in a complete miscarriage of justice.'" *Williams v. United States*, 2016 WL 6892375, *2 (M.D. Pa. Nov. 22, 2016) (internal citations omitted).

"In order to prevail on a §2255 motion to vacate, set aside, or correct a sentence, a Petitioner must show '(1) error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *United States v. Bates*, 2008 WL 80048, *2 (M.D. Pa. Jan. 7, 2008) (quoting *Mallet v. United States.*, 334 F.3d 491, 496–97 (6th Cir. 2003)). "The petitioner bears the burden of proof under §2255 and must demonstrate his right to

relief by a preponderance of the evidence." *United States. v. Ayers*, 938 F.Supp.2d 108, 112 (D.D.C. 2013) (citation omitted). A §2255 motion "is addressed to the sound discretion of the district court." *United States v. Williams*, 615 F.2d 585, 591 (3d Cir. 1980).

Torner's instant claims fall within the purview of §2255. *Bates*, 2008 WL 80048, *3 ("Claims of ineffective assistance of counsel may be brought in the first instance by way of a §2255 motion regardless of whether the movant could have asserted the claim on direct appeal.") (citing *Massaro v. United States*, 538 U.S. 500, 504 (2003)). The relevant legal standards for claims of ineffective assistance of counsel are as follows. The Sixth Amendment to the United States Constitution guarantees a criminal defendant "the assistance of counsel for his defense." U.S. Const. Amend. VI. The Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), established a two-prong test to evaluate the effectiveness of the assistance of counsel. In the first prong, the defendant must show "that counsel's performance was deficient," *id.* at 687, and he must prove this by "showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* In addition, the defendant must show that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 687–88.

> A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that under the circumstances, the challenged action "might be considered sound trial strategy."

*Id.* at 689.

In the second prong, a defendant must show that counsel's deficient performance "prejudiced the defense," because "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding. Virtually every act or omission of counsel would meet that test, *see United States v. Valenzuela-Bernal*, 458 U.S. 858, 866–67 (1982), and not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding." *Strickland*, 466 U.S. at 693. Rather, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine the confidence in the outcome." *Id.* at 694. Thus, to state a successful claim for ineffective assistance of counsel, petitioner must show

- 7 -

"both that counsel's performance was deficient, and that the deficiency prejudiced the defense." *Wiggins v. Smith*, 539 U.S. 510, 521 (2003). "A failure to make the required showing on either prong defeats a defendant's ineffective assistance of counsel claim." *Ayers*, 938 F.Supp.2d at 113 (citing *Strickland*, 466 U.S. at 700).

With those standards as a backdrop, we turn to Torner's ineffective assistance of counsel arguments.

## III. DISCUSSION

### A. Admissibility of audio/video recordings

Torner claims counsel was ineffective for failing to address the admissibility of the audio and video recordings, since these recordings "were not made in accordance with Pennsylvania law." (Doc. 354 at 6). This argument can be disposed of rather quickly.

First, Torner, whose burden it is to demonstrate his counsel was ineffective, states that the recordings violated Pennsylvania law but provides no explanation or legal authority in support. Thus, it is not clear how "addressing" the recordings' admissibility—with the court or, as Torner casually avers in a single paragraph in his motion, by impeaching a government witness—would have benefited Torner's defense.

Second, and more importantly, federal criminal trials are governed by the Federal Rules of Evidence, federal statutes, and controlling federal case law. Even if the recordings were inadmissible under Pennsylvania law, that has no bearing on their admissibility in federal court.

Therefore, Torner's averments regarding the recordings do nothing to demonstrate his counsel's ineffectiveness. Counsel cannot be deemed ineffective for failing to raise a meritless argument.

### B. Presence for disqualification of a juror

Next, Torner claims his counsel was ineffective for not having Torner present for a discussion with the court regarding the disqualification of a juror who appeared to be sleeping during the trial. Torner says that, considering the alleged distrust Torner had for his counsel, not having him present for the disqualification discussion was "highly inappropriate." (Doc. 354 at 9). This argument similarly fails to demonstrate counsel's ineffectiveness.

First, as the government points out, the record does not clearly support the allegation that Torner was absent from the proceedings regarding disqualifying the juror. Much of the discussion appeared on the record in the courtroom. (*See* Doc. 371-3). There was also a sidebar with the court and counsel, but the actual dismissal of the juror occurred in open court.

Second, and more importantly, the Third Circuit has held for years that "there is no constitutional right for a defendant to be present at a conference in chambers concerning dismissal of a juror." *United States v. Provenzano*, 620 F.2d 985, 997 (3d Cir. 1980) (collecting cases). Thus, even if Torner were absent from the disqualification discussions, his absence did not constitute constitutional error.

Third, Torner does not explain or argue how his purported absence from the disqualification discussions prejudiced him.

Therefore, counsel's alleged failure to secure Torner's presence at the juror disqualification proceedings or discussions did not render him ineffective.

### C.   Miscellaneous ineffectiveness claims

Lastly, Torner makes a series of miscellaneous attacks on his trial counsel relating to his examination of witnesses, his decision not to call a codefendant as a witness, and his decision to stipulate to the accuracy of lab tests for heroin. (Doc. 355 at 7). None of the miscellaneous attacks on his trial counsel demonstrate ineffectiveness because each ground falls within the trial lawyer's province. Indeed, while defendants have authority to make "fundamental decisions" such as "whether to plead guilty" or "to testify in one's own behalf," *Gov't of Virgin Islands v. Weatherwax*, 77 F.3d 1425, 1433

(3d Cir. 1996) (citation omitted), "[t]rial management is the lawyers province: Counsel provides his or her assistance in making decisions such as 'what arguments to pursue, what evidentiary objections to raise, and what agreements to conclude regarding the admission of evidence,'" *McCoy v. Louisiana*, 138 S. Ct. 1500, 1508 (2018) (citation omitted). Each of Torner's miscellaneous grounds for ineffective assistance of counsel falls within the category of "trial management" and does not demonstrate Torner's counsel fell below an objective standard of reasonableness. Moreover, Torner has not demonstrated prejudice to his defense as a result of these alleged failures of counsel. A review of the record reveals overwhelming evidence supporting the verdict against Torner, and even if counsel had pursued every trial strategy Torner now advocates for in hindsight, the record does not suggest the result would have been different. Accordingly, the court will deny the motion to vacate.

## IV.  EVIDENTIARY HEARING

Torner's motion does not warrant an evidentiary hearing. "Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States Attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with

respect thereto." 28 U.S.C. §2255(b). *See United States v. Day*, 969 F.2d 39, 41-42 (3d Cir. 1992) (The court is required to conduct an evidentiary hearing to ascertain the facts "unless the motion and files and records of the case show conclusively that the movant is not entitled to relief.") (citation omitted). However, the court need not accept the petitioner's allegations as true if they "are unsupported by specifics [or] wholly incredible in the face of the record." *Patton v. United States*, 2010 WL 3191887, *1 (W.D. Pa. 2010) (citing *United States v. Estrada*, 849 F.2d 1304, 1307 (10th Cir. 1988)). A review of the motion, the traverse and the government's brief, as well as the law and the claims make it clear that Torner's claims are without merit. The court finds Torner is not entitled to an evidentiary hearing because the record conclusively establishes that he is not entitled to the relief sought in his §2255 motion. Therefore, the court, in its discretion, finds no reason to hold an evidentiary hearing.

V. **CERTIFICATE OF APPEALABILITY**

A petitioner may not file an appeal from a final order unless a district or circuit judge issues a certificate of appealability (COA) pursuant to 28 U.S.C. §2253(c). A COA shall not issue unless "the applicant has made a substantial showing of the denial of a constitutional right." §2253(c)(2). The petitioner must show that "jurists of reason could disagree with the district

court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003); *see also Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Here, a COA will not issue because Torner has not shown either the denial of a constitutional right nor that jurists of reason would disagree with this court's resolution of his claims.

### VI.  CONCLUSION

In light of the foregoing, the court will **DENY** Torner's motion to vacate pursuant to §2255. (Doc. 354). An appropriate order follows.

*s/ Malachy E. Mannion mem*
**MALACHY E. MANNION**
**United States District Judge**

**DATE: November 1, 2023**
17-343-03